IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

BRITTNEY MCDOUGLE, INDIVIDUALLY, AND          **PLAINTIFFS**
ON BEHALF OF THE HEIRS AND WRONGFUL
DEATH BENEFICIAIRES OF MICHAEL MCDOUGLE

V.                     CIVIL ACTION NO. 3:15-cv-00350-CWR-FKB

NESHOBA COUNTY, MISSISSIPPI, *ET AL.*          **DEFENDANTS**

---

## MEMORANDUM OF AUTHORITIES SUPPORTING
## MOTION OF GRANT MYERS AND THE CITY OF PHILADELPHIA FOR
## SUMMARY JUDGMENT ON ALL PLAINTIFF'S CLAIMS

---

Defendants, the City of Philadelphia (the "City") and its chief of police Grant Myers ("Chief Myers") (collectively "Defendants"), submit this Memorandum of Authorities supporting their motion for summary judgment on all Plaintiff's claims.

## <u>INTRODUCTON</u>

This 42 U.S.C. Section 1983 civil rights action against Chief Myers in his official and individual capacities and against the City (the "federal claims") arise out of the arrest and subsequent death in jail of Michael McDougle. In addition to the federal claims, Plaintiff also asserts various state law claims arising out of the same incident. Plaintiff's federal claims fail because Plaintiff cannot establish supervisory liability under Section 1983, cannot establish a violation of any constitutional right and, even if Plaintiff could establish the violation of a constitutional right, cannot point to any specific admissible facts showing that a policy adopted with deliberate indifference as to the constitutional rights of citizens by the City or Chief Myers was the "moving force" behind the constitutional

violation. Plaintiff's state law claims fail because Defendants are entitled to the immunities and protections of the Mississippi Tort Claims Act.

## SUMMARY OF FACTS

During the late night of November 1, 2014, Michael McDougle, a 29 year-old male, busted through the door of the residence of Billy Seales, ripping the deadbolt through the door frame. *See* Seales Dep. at 50 (Ex. "A"). Seales threw McDougle to the ground and held him while Polly Boler (Seales' girlfriend) called 911. *See* (Ex. "A" at 50-51); Boler Dep. At 11-12, 24, 36-39 (Ex. "L"). The first police officer on the scene, Officer Lyons, attempted to handcuff McDougle, but McDougle aggressively resisted the cuffing by kicking and trying to bite Officer Lyons. *See* (Ex. "L" at 18-19); Lyons Dep. at 17-18 (Ex. "B"); ECF No. 24-9. After McDougle refused to comply with verbal commands, Officer Lyons attempted to tase him, but the barbs did not make contact with his skin and the tasing had no effect. *See* (Ex. "B" at 18); ECF Nos. 24-4, 24-9. Officer Lyons next wrapped his arms around McDougle in an attempt to restrain him, and, because of McDougle's continued resistence, the two men fell onto the ground in Seales's front yard. *See* (Ex. "A" at 50-51); (Ex. "B" at 18-19). Officer Lyons held McDougle down in Seales' yard and, with the help of Seales, radioed for backup. *See* (Ex. "B" at 19).

Officer Brad Crockett was the next officer to arrive. *See* (Ex. "B" at 19-20); Crockett Dep. at 21 (Ex. "C"). With Officer Crockett's help, Officer Lyons was able to handcuff McDougle. *See* (Ex. "B" at 19-20); (Ex. "C" at 22). Chief Myers had no personal involvement in the arrest of McDougle. *See* ECF No. 24-3.

McDougle was transported to and accepted as an inmate by the Neshoba County Jail on charges of breaking and entering, resisting arrest, and disorderly conduct. *See* ECF No. 26-4. He was placed in an isolation cell and, shortly after arriving, was examined by Brandi Wyatt and Dereck Moore, two nationally-registered paramedics. *See* Moore Dep. at 8 (Ex. "D"); Wyatt Dep. at 7-8, 27 (Ex. "E"); Monk Dep. at 27 (Ex. "F"). Although McDougle appeared agitated in be in jail and refused to answer some questions, the paramedics found McDougle responsive and oriented. *See* (Ex. "E" at 37-38, 45-46); ECF No. 24-8; (Ex. "D" at 24-25, 36). The paramedics' examination further found that McDougle had good blood circulation, a normal pulse, normal pupils, and only slightly elevated respiration and blood glucose levels. *See* (Ex. "D" at 26-27, 35-36); (Ex. "E" at 17-18, 20, 38-39), ECF No. 24-8. The paramedics found no indication of obvious trauma, serious injury or illness, or any life threatening conditions. *See* (Ex. "D" at 37, 45, 47, 49-50); (Ex. "E" at 39-40, 53-55); ECF No. 24-8. The paramedics found no reason to transport McDougle to the hospital, and McDougle himself verbally indicated to paramedic Dereck Moore that he did not wish to go to the hospital. *See* (Ex. "D" at 21-22, 51-52); (Ex. "E" at 42-43, 53-54, 55); (Ex. "F" at 19); Ray Dep. at 23 (Ex. "G").

McDougle's condition appeared to remain static throughout the night and early the following morning. *See* Groves Dep. at 60 (Ex. "H"); Hickmon Dep. at 14-15 (Ex. "I"); McBeath Dep. at 14 (Ex. "J"); O'Berry Dep. at 20-21 (Ex. "K"); (Ex. "F" at 29-30); ECF No. 24-6; ECF No. 24-7. At breakfast time the following morning (about 7:30 a.m.), however, McDougle was found dead in his cell. *See* (Ex. "I" at 20-21); (Ex. "K" at 21); ECF No. 24-9. The autopsy report indicates the cause of death was a combination of a head

injury (of unknown origin) and mixed drug toxicity (cocaine, methamphetamine, amphetamine and marijuana). *See* ECF No. 24-9.

McDougle's wife, Brittney McDougle, brought a wrongful death lawsuit against Neshoba County, Sheriff Tommy Waddell, Neshoba County jailers Amanda Monk, Evelyn McBeath, Harvey Hickmon, Burton O'Berry, Jamie Hutcheson, and Joey Curry; the City of Philadelphia, Police Chief Grant Myers, and Philadelphia police officers Eric Lyons, Brad Crockett, Brandon Pope, Josh Ray; and Neshoba County General Hospital.[1] *See* ECF Nos. 1, 42, 113, 124. McDougle's estate is also a party, via its administrator, *i.e.*, Mary McDougle, his mother (all plaintiffs are collectively referred to herein as "Plaintiff"). *See* ECF No. 124.

## LEGAL STANDARD

Defendants moves for summary judgment on all claims asserted against them under Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides:

> The court **shall** grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a) (emphasis added). As characterized by the United States Supreme Court, Rule 56 is "an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotes omitted). Questions of law, such as the existence of immunity, which is effectively lost if the case erroneously proceeds

---

[1] Plaintiff's claim for medical malpractice and professional negligence against Neshoba County General Hospital for alleged failure to provide proper medical care by the paramedics, *see* ECF No. 42, was dismissed by this Court as time-barred. *See* ECF No. 103.

to trial, should be decided by the court on summary judgment. *Fredrick v. Jones County Board of Supervisors*, No. 2:11-CV-002244-MTP, 2013 WL 4833851 at *3 (S.D. Miss. Sept. 11, 2013). Moreover, the defense of qualified immunity alters the usual burden of proof in the context of summary judgment. *Id.* Once qualified immunity is claimed, the burden shifts to the plaintiff to present significant probative evidence that creates a genuine issue of fact material to rebutting the defense of immunity. *Id; In re: Municipal Bond Reporting Anti-Trust Lit.*, 672 F.2d 4346, 440 (5th Cir. 1982).

## ARGUEMENT AND AUTHORITIES

**I.  Plaintiff's Claims Against Chief Myers in His Official Capacity are Redundant of Her Claims Against the City and Should be Dismissed.**

Plaintiff has sued Chief Myers' employer, the City of Philadelphia, for the same acts for which she has sued Chief Myers in his official capacity. *See* ECF No. 124. The law is clear that claims against an employee of a governmental entity in his official capacity are not against the employee, but against the office he holds. *Kentucky v. Graham*, 437 U.S. 159, 165 (1985). Given that the City is already a party, the claims against Chief Myers in his official capacity are redundant and should be dismissed. *McBride v. Davis*, No. 1:13-cv-27-HSO-RHW, 2015 WL 370110 at *4 (S.D. Miss. Jan. 28, 2015); *Pride v. City of Biloxi*, No. 1:10-cv-100-LG-RHW, 2011 WL 5835109 at *5 (S.D. Miss. Nov. 21, 2011).

**II.  Plaintiff's Section 1983 Claims Against Defendants Fail as a Matter of Law.**

**A.  Plaintiff Cannot Establish a Section 1983 Constitutional Violation Against Defendants Based on Vicarious Liability.**

Under well-established federal law, Plaintiff cannot recover against the City for the acts of its employees, *see Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978), or against supervisory officials (here, Chief Myers) for the

actions of subordinates under "any theory of vicarious or *respondeat superior* liability." *McCully v. City of North Richland Hills*, 406 F.3d 375, 380-81 (5th Cir. 2005); *Thomas v. Scott County*, No. 3:14-cv-328-CWR-LRA, 2015 WL 5009715 at *6 (Aug. 21, 2015). As to Chief Myers, Plaintiff must (but cannot) show some specific and identifiable conduct of Chief Myers that denied McDougle a constitutionally-protected right. *McCulley*, 406 F.3d at 380-81. It is undisputed that Chief Myers was not present on the scene when McDougle was arrested on November 1, 2014. *See* ECF No. 24-3. Chief Myers had no personal involvement in the arrest or detention of McDougle on November 1, 2014. *See* ECF No. 24-3. As to the City, Plaintiff must (but cannot) establish that a policy adopted with deliberate indifference was the "moving force" behind a legally cognizable constitutional violation.

> **B.** **Plaintiff Cannot Establish a Section 1983 Claims Against Defendants Based on Patterns, Policies, Practice and/or Customs, and Alleged Negligence in Hiring, Monitoring, Training, and Supervising.**

Plaintiff makes the vague and unsupported allegation that the City (along with Neshoba County) are liable for violating McDougle's constitutional rights via official policies, customs, and practices. *See* ECF No. 124. To establish such liability, Plaintiff must show (1) the existence of a policymaker; (2) a decision that amounts to a "policy" under *Monell* and progeny; (3) a decision so "deliberately indifferent" to the rights of citizens such that the policymaker can fairly be deemed culpable for the injury; (4) a sufficient causal connection between the policy decision and the resulting constitutional violation; and (5) an actual constitutional injury. *Lofton v. Adams County, Miss.*, No. 5:07-cv-80-DCB-JMR, 2008 WL 4192039 at *4 (S.D. Miss. Sept. 5, 2008) (citing *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).

6

Plaintiff further alleges that Defendants were negligent, grossly negligent and wanton in hiring, monitoring, training and supervising the officers involved in McDougle's arrest. *See* ECF No. 124. Defendants are immune from liability under this theory unless Plaintiff shows: (1) the training or hiring procedures of Defendants were inadequate; (2) the policymaker was deliberately indifferent[2] in adopting the procedures; and (3) the inadequate policy directly caused a constitutional violation. *Benavides v. County of Wilson*, 955 F.2d 968, 972 (5th Cir. 1992). For brevity, these two claims are addressed together below, and all policies, customs, and practices related to the hiring, monitoring, training, supervising and conduct of the police officers are hereinafter referred to as a "Policy" (singular) or "Policies" (plural). Because Plaintiff's complaint is not clear which alleged constitutional violation she blames on inadequate Policies, Defendants will briefly address each constitutional violation alleged in Plaintiff's complaint.

In short, Plaintiff cannot meet her burden of surviving qualified immunity on either Policy claim because she cannot meet her burden of establishing any constitutional violation.[3] Even if Plaintiff could establish a constitutional violation, she cannot recover against Defendants unless she also demonstrates (with specific admissible facts) that the violation was caused by a Policy implemented by Defendants with deliberate indifference

---

[2] Deliberate indifference, which is the required standard under both of Plaintiff's Policy theories, requires Plaintiff to show a pattern of violations and that the alleged inadequacy of the Policy at issue is "obvious and obviously likely to result in a constitutional violation." *McCully*, 406 F.3d at 381. Any of Plaintiff's claims based on a standard less than the "deliberate indifference" standard are misplaced and must be dismissed. *E.g., Pernell v. City of Columbus*, No. 1:08-cv-0040-DD, 2010 WL 1737638 at *6 (N.D. Miss. Apr. 28, 2010).

[3] That Plaintiff cannot meet her burden is shown herein, as well as in the motions for summary judgment and supporting papers of Eric Lyons, Brad Crockett, Brandon Pope, and Josh Ray, all of which are incorporated herein by reference.

to the fact that such Policy will obviously result in constitutional violations. *E.g., Long v. King*, No. 1:3-cv-506-MTP, 2014 WL 5410324 at *4 (S.D. Miss. Oct. 22, 2014).

### 1.    Plaintiff Cannot Establish a Constitutional Violation Based on False Arrest.

To prevail on her False Arrest claim, Plaintiff must show that Officer Lyons lacked probable cause to arrest McDougle. *Haggerty v. Texas S. Univ.,* 391 F.3d 653, 655-56 (5th Cir. 2004). As this Court has stated:

> Probable cause exists when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense. . . .Therefore [Officer Lyons] is entitled to qualified immunity if a reasonable officer in his position could have believed that, in light of the totality of the facts  and circumstances of which [Officer Lyons] was aware, there was a fair probability that [McDougle] had committed or was committing an offense. . . . Even law enforcement officials who reasonably but mistakenly conclude that probable cause is present are entitled to immunity.

*Lewis v. City of Jackson, Mississippi*, No. 3:12-cv-53-CWR-FKB, 2014 WL 282024 at *4 (S.D. Miss. Jan. 24, 2014) (quoting *Haggerty*, 391 F.3d at 655-56).

It is undisputed that McDougle busted through Seales's front door (ripping the deadbolt through the door frame) and entered an occupied dwelling against the will of its occupants. *See* (Ex. "A" at 50-51, 59);  (Ex. "L" at 11-12, 16, 24-26, 33); Seales, the home owner, instructed Boler to call 911 while he restrained McDougle. *See* (Ex. "A" at 50-51); (Ex. "L" at 11-12). Officer Lyons received the call from dispatch, which reported a breaking and entering in progress at 285 West Atkins Street and that the subject was currently being restrained by the resident. *See* (Ex. "B" at 11); ECF No. 24-4. When Officer Lyons arrived at 285 West Atkins, he observed Billy Seales (the homeowner) restraining

McDougle. *See* (Ex. "B" at 17). There can be no reasonable dispute that, given these facts, Officer Lyons had probable cause to arrest McDougle. *See Lewis*, 2014 WL 282024 (probable cause existed to arrest suspect on burglary charges where suspect was roaming the streets near the time and place where the burglary reportedly occurred). Therefore, Plaintiff's false arrest claim lacks merit and does not establish a constitutional violation.

Even if Plaintiff could establish a constitutional violation based on false arrest, Plaintiff's claims against Defendants should still be dismissed because (1) Chief Myers played no part in the arrest and (2) Plaintiff cannot point to any specific admissible facts showing that a Policy adopted with deliberate indifference was the "moving force" behind the alleged false arrest. Therefore, Plaintiff's Policy claim against Defendants based on the alleged false arrest should be dismissed.

### 2. Plaintiff Cannot Establish a Constitutional Violation Based on Excessive Use of Force.

To overcome qualified immunity and establish a constitutional violation based on excessive use of force, Plaintiff must prove: (I) the violation of a constitutional right; and (II) that the right allegedly violated was <u>clearly established</u> at the time of the violation. *Deshotels v. Marshall*, 454 Fed. App'x 262, 266 (5th Cir. 2011). Unless Plaintiff establishes both prongs, Officer Lyons is entitled to summary judgment on qualified immunity grounds. *Id.* Here, neither prong is met.

To establish the prong I, *i.e.*, violation of a constitutional right, Plaintiff "must prove: (1) injury,[4] (2) which resulted directly and only from a use of force that was clearly

---

[4] There is no evidence that McDougle's head injury occurred while Officer Lyons was attempting to subdue and arrest McDougle. First, neither the paramedics nor the intake jailer saw any sign of head injury at the time McDougle was received as an inmate at the jail. *See* (Ex. "D" at 36-37); (Ex. "E" at 38,

excessive, and (3) the excessiveness of which was clearly unreasonable." *Lewis v. City of Jackson, Mississippi*, No. 3:12-cv-53-CWR-FKB, 2014 WL 282024 at *4 (S.D. Miss. Jan. 24, 2014) (quoting *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)). The relevant inquiry is whether the force used by Officer Lyons was clearly excessive or clearly unreasonable given the totality of the circumstances. The totality of the circumstances include, (a) the severity of the crime at issue, (b) whether the suspect poses an immediate threat to the safety of the officers or others, and (c) whether he is actively resisting arrest or attempting to evade arrest by flight. *Bush*, 513 F.3d at 501 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). When evaluating prong I, "[c]ourts must be mindful that police officers are often required to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving." *Deshotels*, 454 Fed. App'x at 267. Therefore, courts must consider the reasonableness of actions from the perspective of an officer in the heat of the moment at the scene and not with the benefit of "20/20 vision of hindsight." *Id.*

Plaintiff cannot establish prong I because Officer Lyons' actions were objectively reasonable under the circumstances. Officer Eric Lyons was the first officer to arrive at the scene at a reported breaking and entering of an occupied dwelling late at night. *See* (Ex. "B" at 17-18); ECF No. 24-4. There were three occupants in the home at the time, Seales, Polly Boler, and Ms. Boler's elderly father. *See* (Ex. "L" at 11-12). When Officer Lyons

---

40); (Ex. "F" at 17); ECF No. 24-8. Second, even assuming McDougle suffered a head injury prior to being admitted to the jail, there is no evidence that it occurred during his resisting Officer Lyons arrest as opposed to occurring at some point prior to his breaking into Seales's house, during his break-in, or during his struggle with Seales when he was thrown to the floor. *See* (Ex. "A" at 50-51); *see also First Nat'l Bank of Commerce v. Monco Agency, Inc.*, 911 F.2d 1053, 1057 (5th Cir. 1990) (evidence must be "significantly probative" and not merely "colorable" to survive summary judgment).

arrived, he found Seales holding McDougle down in the doorway of Seales' home. *See* (Ex. "B" at 17); ECF No. 24-4. Officer Lyons ordered McDougle to turn onto his stomach, but McDougle failed to comply. *See* (Ex. "B" at 18); ECF No. 24-4. While Seales was still restraining McDougle, Officer Lyons attempted to handcuff him. See ECF No. 24-4. McDougle began to struggle with Lyons and Seales to avoid being handcuffed. See (Ex. "A" at 51); (Ex. "B" at 17-18); ECF No. 24-4. As McDougle's resistance escalated and he refused to comply with verbal commands, Officer Lyons attempted to tase McDougle, but to no effect *See* (Ex. "A" at 36-37); (Ex. "B" at 17-18); ECF No. 24-4; ECF No. 24-9 (the forensic pathologist who conducted the autopsy on McDougle's body reported "no CED barb impact sites were identified"). Apparently, McDougle's clothing prevented the barb from penetrating.

Next, McDougle attempted to stand and Officer Lyons tried to restrain him. *See* (Ex. "B" at 17-20); ECF No. 24-4. When McDougle attempted to bite Officer Lyons, he released McDougle. *See* (Ex. "B" at 17-18); ECF No. 24-4. Then, as McDougle attempted to flee, Officer Lyons grabbed McDougle and, as he struggled, McDougle and Lyons ended up on the ground in Seales' front yard. *See* (Ex. "A" at 27); (Ex. "B" at 17-20); ECF No. 24-4. Lyons laid on top of McDougle and asked Seales to retrieve his radio, which had fallen to the ground. *See* (Ex. "B" at 19-20); ECF No. 24-4. Lyons used his radio to call dispatch to request backup. *See* (Ex. "B" at 19-20); ECF No. 24-4. Officer Lyons continued to restrain McDougle until Officer Crockett arrived and assisted with handcuffing McDougle. *See* (Ex. "B" at 19-20); ECF No. 24-4.

Throughout the apprehension and arrest of McDougle, Officer Lyons used only the amount of force necessary to restrain him and bring him under control. Even though McDougle was aggressively resisting arrest (kicking and biting at Officer Lyons), Officer Lyons did not punch or kick McDougle, nor did he use or attempt to use any weapons to subdue McDougle, other than his taser. *See* (Ex. "A" at 53, 55-56); (Ex. "B" at 17-20); ECF No. 24-4. Given the totality of the circumstance, *i.e.*, the dangerous condition created by McDougle breaking into an occupied dwelling at night and the fact that McDougle was actively resisting arrest, Officer Lyons's actions to subdue McDougle were objectively reasonable. For this reason, Plaintiff cannot establish prong I of the qualified immunity analysis.

Even if Plaintiff established prong I (which she cannot do), she must also establish prong II --- the right was <u>clearly established</u> at the time of the alleged violation. To claim that the right violated was "clearly established," Plaintiff must be able to point to "controlling authority" or, at least, "a robust consensus of persuasive authority" that defines with particularity the contours of the right in question. *Hogan v. Cunningham*, 722 F.3d 725, 735 (5th Cir. 2013). Not only is Plaintiff unable to show Officer Lyons violated a "clearly established" right, but, Fifth Circuit authority makes clear that Officer Lyons's actions were reasonable under the circumstances. *See Deshotels*, 454 Fed. App'x at 267-68 (finding officer's use of force objectively reasonable in a case with similar facts). Therefore, Plaintiff also cannot meet her burden of establishing prong II, and Plaintiff cannot establish a violation of a clearly established constitutional right based on excessive use of force.

Even if Plaintiff could establish a constitutional violation based on excessive use of force, Plaintiff's claims against Defendants should still be dismissed because (1) Chief Myers had no contact with McDougle at any time on the day of his arrest through the time of his death and (2) Plaintiff cannot point to any specific admissible facts showing that a Policy adopted with deliberate indifference was the "moving force" behind the alleged excessive use of force. Therefore, Plaintiff's Policy claim against Defendants based on alleged excessive use of force should be dismissed.

### 3. Plaintiff Cannot Establish McDougle was Denied Medical Care in Violation of his Constitutional Rights.

Counts Three and Eleven of Plaintiff's Amended Complaint allege that the Defendants "acted with deliberate indifference to McDougle, Sr.'s need for medical care" in violation of his rights under the Fourteenth and/or Eighth Amendment. *See* ECF No. 124. The only cognizable right in this arena is that arrestees or prisoners are entitled not to have his/her objectively <u>serious medical needs</u> disregarded. *Estelle v. Gamble*, 429, U.S. 97, 104-06, 97 S.Ct. 285, 50 L.Ed 2d 251(1976). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (quoting *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995)). The same two prong analysis discussed above governs.

In order to establish a Fourteenth or Eighth Amendment claim for denial of medical care the Plaintiff must establish that Officer Lyons acted with deliberate indifference to a serious medical need. To establish "deliberate indifference", Plaintiff must prove that Officer Lyons <u>knew</u> that McDougle faced a substantial risk of serious harm and that the

officer intentionally disregarded that risk. *Lewis v. Pugh*, 289 Fed. App'x 767, 772 (5th Cir. 2008). Deliberate indifference requires a showing of "more than negligence, more even than gross negligence. . . ." *Estate of Rosenberg v. Crandell*, 56 F.3d 35 (8th Cir. 1995).

Given that Officer Lyons reasonably relied on the judgment of two trained medical professionals, Plaintiff cannot even establish simple negligence, much less deliberate indifference. It is undisputed that McDougle was examined by Dereck Moore and Brandi Wyatt, two nationally-registered paramedics from Neshoba County EMS just minutes after his arrival at the jail. *See* (Ex. "D" at 8); (Ex. "E" at 7-8, 27); (Ex. "F" at 27). The paramedics found that McDougle was responsive and oriented. *See* (Ex. "D" at 24-25, 36); (Ex. "E" at 37-38, 45-46); ECF No. 24-8. The paramedics's examination further found that McDougle had good circulation, a normal pulse, normal pupils, and only slightly elevated respiration and blood glucose levels. *See* (Ex. "D" at 26-27, 35-36); (Ex. "E" at 17-18, 20, 38-39); ECF No. 24-8. The paramedics found no indication of obvious trauma, serious injury or illness, or any potentially life threatening condition. *See* (Ex. "D" at 37, 45, 47, 49-50); (Ex. "E" at 39-40, 53-55); ECF No. 24-8. The Plaintiff cannot credibly argue that McDougle's condition was such that a layperson would recognize it as a "serious medical need" when trained and certified paramedics did not recognize it as such.

Moreover, the undisputed evidence shows that Officer Lyons knew McDougle was being evaluated by paramedics and that he relied upon the judgment of those paramedics as to whether McDougle had an objectively serious medical need, which he is entitled to do. *See* (Ex. "B" at 22-24, 44-45); *see also Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) ("The prison officials lacked both medical and dental expertise and were entitled to

reply upon (nurse's) medical opinion."). He even waited at the jail to assist with McDougle's transport to the hospital in the event the paramedics indicated McDougle needed to see a physician. *See* (Ex. "B" at 22-24, 44-45). This is a far cry from being deliberately indifferent. Given the undisputed fact that McDougle was examined at the jail by paramedics who failed to diagnose any serious medical need, the Plaintiff cannot meet her burden of proving that Officer Lyons acted with deliberate indifference to an objectively serious medical need.

Similarly, Plaintiff cannot establish prong II of the qualified immunity analysis because there is no "clearly established" law that would require Officer Lyons to possess and exhibit medical judgment superior to that held by nationally-registered paramedics, who were not of the opinion that McDougle had a serious medical need.

Even if Plaintiff could establish a constitutional violation based on his claim of delay or denial of medical care, Plaintiff's claims against Defendants should still be dismissed because (1) Chief Myers made no decisions regarding Plaintiff's medical care and (2) Plaintiff cannot point to any specific admissible facts showing that a Policy adopted with deliberate indifference was the "moving force" behind the constitutional violation. See *Pernell*, 2010 WL 1737638 at \*6 (citing *Burns v. City of Galveston, Texas*, 905 F.2d 100, 104 (5th Cir. 1990)) (police officers not required to "diagnose" suspect or possess skills of an "experienced medical professional"). Therefore, Plaintiff's Policy claim against Defendants based on alleged denial of medical care should be dismissed.

**III.** **Plaintiff's State Law Claims against Defendants are Barred by the Immunities and Protections of the MTCA**

Plaintiff has asserted various state law claims, including: (i) assault and battery (Count Two); (ii) and wrongful death (Count Five); (iii) intentional and/or negligent infliction of emotional distress (Count Nine); and (iv) general negligence (Count Seven). *See* ECF No. 124. All Plaintiff's state law claims directed at Defendants are governed by the Mississippi Tort Claims Act, Mississippi Code Annotated Sections 11-46-1, *et seq.* (the "MTCA"), which provides the exclusive procedure and remedy for suit against a governmental entity and its employees. MCA § 11-46-7(1).

**A.** **Chief Myers is Immune from Plaintiff's State Law Claims Against Him in His Individual Capacity Under MCA Section 11-46-7(2).**

Given that Chief Myers had no involvement in McDougle's arrest, he cannot be individually liable under any theory of law. In any event, it is beyond dispute that any allegations against Chief Myers based on his being the police chief are for acts/omissions performed within the course and scope of his duties as police chief. The Mississippi Tort Claims Act provides: "[n]o employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties." MCA § 11-46-7(2). Application of this code section has established that public employees, such as police officers, have no personal liability for acts in the course and scope of their employment. *See Smith v. Brookhaven*, 914 So.2d 180 (Miss. App. 2005) *cert. denied* 921 So.2d 344 (Miss. 2005) (arresting officer was acting within the course and scope of his employment and, therefore was not personally liable.); *Gale v. Thomas*, So.2d 1150 (Miss. 1998) (section 11-46-7(2) precludes a police officer from being held personally liable for acts

occurring within the course and scope of employment.) *Id.* 1156. Therefore, Plaintiff's state law claims against Officer Lyons in his individual capacity, must be dismissed.

**B.    Defendants are Immune From Plaintiff's State Law Claims Under MCA Section 11-46-9(1).**

MCA Section 11-46-9(1)(c) provides:

> (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
>
> ***              ***              ***
>
> (c)  Arising out of any act of omission of an employee of a governmental entity engaged in the performance or executions of duties or activities related to police . . . protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of injury;

McDougle was engaged in criminal activity at all times during his contact with Officer Lyons. It is undisputed that he busted through the door of an occupied dwelling at night. The resident of that dwelling subdued McDougle and instructed his girlfriend to call 911, which she did. *See* (Ex. "A" at 50-51); (Ex. "L" at 11-12, 24, 36-39). Officer Lyons was responding to that 911 call when he arrested McDougle. *See* (Ex. "A" at 50-51); (Ex. "B" at 16-17). McDougle was accepted as an inmate at the Neshoba County jail on charges of breaking and entering, resisting arrest, and disorderly conduct. *See* ECF No. 26-4.

Even if McDougle were not engaged in criminal activity at the time of the incident, Defendants would still be entitled to immunity because none of the police officers acted with "reckless disregard of [McDougle's] safety and well-being." MCA § 11-46-9(1)(c). "Reckless disregard" is a standard higher than gross negligence and is judged from the

perspective of a reasonable officer in the heat of the moment at the scene given all the circumstances, and without the benefit of the 20/20 vision of hindsight. *Hinds County v. Burton*, 187 So. 3d 1016, 1022 (Miss. 2016). As shown herein, none of the police officers acted with reckless disregard as to the safety and well-being of McDougle.

**C.    Plaintiff's Claims Against Defendants are Barred Due to Her Failure to Comply with the MTCA's Mandatory Pre-Suit Notice Requirement.**

The MTCA contains a mandatory pre-suit notice requirement that provides in part:

> . . . at least ninety (90) days before instituting suit, the person must file a notice of claim with the . . city clerk.

MCA § 11-46-11(1), (2)(a)(i)(2). The Mississippi Supreme Court has made clear that strict compliance with the notice requirement of MTCA Section 11-46-11 is required and, absent strict compliance by Plaintiff, her case must be dismissed. *University of Miss. Med. Ctr. V. Easterling*, 928 So. 2d 815, 819-20 (Miss. 2006); *Jones v. Laurel Family Clinic, P.A.*, 37 So. 3d 665, 668 (Miss. Ct. App. 2010).

The Plaintiff did not provide notice of claim to the Philadelphia city clerk ninety days prior to filing suit on May 8, 2015, as required by the MTCA, and thus her state law claims are barred. Although Plaintiff purported to give notice of her claim on May 27, 2015, *see* Letter (Ex. "M"), Mississippi case law is clear that notice provided after the complaint is filed is not sufficient to establish strict compliance with the statute. *Brown v. Southwest Miss. Reg'l Med. Ctr.*, 989 So. 2d 933, 936-37 (Miss. Ct. App. 2008). For this additional reason, Plaintiff's state law claims are barred and should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff has no cognizable claims against Defendants and Defendants are entitled to judgment as a matter of law.

Dated this the 21st day of October, 2016.

Respectfully submitted,

Grant Myers and The City of Philadelphia,

BY:    /s/ *D. Jason Childress*

**OF COUNSEL:**

JOHN D. PRICE (MSB #4495)
D. JASON CHILDRESS (MSB #103678)

**WISE CARTER CHILD & CARAWAY**
POST OFFICE BOX 651
JACKSON, MISSISSIPPI 39205-0651
Main Line: (601) 968-5500
Facsimile: (601) 944-7738
jdp@wisecarter.com
djc@wisecarter.com

## CERTIFICATE OF SERVICE

I, D. Jason Childress, do hereby certify that on this day, I have electronically filed the foregoing with the Clerk of the Court using the ECF system which sent such notification to all counsel of record:

Dated this the 21st day of October, 2016.

/s/ *D. Jason Childress*