# W. Lloyd Grafton
### Consultant/Expert Witness
### 3896 Hwy 33
Ruston, Louisiana 71270
Telephone (318) 255-4214
Fax (318) 255-6254

July 6, 2016

## OPENING REPORT

RE: Brittney McDougle, Individually, and on behalf of the Heirs and Wrongful Death Beneficiaries of Michael D. McDougle, Sr., Deceased vs. Neshoba County, Mississippi, et al., Civil Action No. 3:15-cv-00350-CWR-FKB

I have reviewed the following information:

- Amended Complaint, Brittney McDougle vs. Neshoba County; Civil Action No. 315-cv-00350-CWR-FKB

- Answer and Defenses of Defendants (13 pages)

- Autopsy Report on Michael McDougle Case: ME-14-1235, County: Neshoba

- News Report Concerning Autopsy, ABC, WJOK, dated February 5, 2015

- Mississippi Department of Health Death Certificate

- Plaintiff's Second Amended Complaint

- Plaintiff's Responses to First Set of Interrogatories and Request for Documents

- Arrest Report #2014110005

- Incident and Crime Report, Case No. 20142188

- Affidavit of David Spivey by Sgt. E. Lyons



EXHIBIT A

2

In addition to the above referenced material, I am basing my remarks and evaluation on my twenty-four (24) years as an Associate Professor of Criminal Justice in the University of Louisiana System, my twenty-three (23) years as a U.S. Special Agent, and my experience in police procedures. I am also basing my opinion on my involvement in law enforcement training at local, state, and national academies during much of these forty-seven (47) years.

Throughout, I shall be referring to such materials as the PPCT Manual, current police periodicals, and criminal justice textbooks on policing, as well as my experience in police and correctional officer policy compliance.

The following is a statement of the opinions I intend to express and the basis and reasons for them:

## OPINION # 1

It is my opinion that the use of force by the Philadelphia Police Department and the Neshoba County Sheriff's Department Officers was clearly excessive and objectively unreasonable, resulting in harm to Michael McDougle.

## OPINION # 2

It is my opinion that the officers present within the jail did not follow proper law enforcement training or guidelines concerning the amount of force to be used involving a taser when a detained individual is having mental issues.

## OPINION # 3

It is my opinion that the Philadelphia Police Officers and the Neshoba County Officers failed to recognize that they had a medical emergency on their hands. Failure to immediately summon jail medical personnel or EMS personnel was objectively unreasonable and indifferent to the obvious needs of Michael McDougle.

## OPINION # 4

It is my opinion that the Neshoba County Sheriff's Department Officers and the Philadelphia Police Officers acted unreasonably and used excessive and unnecessary force by tasing Michael McDougle, known to them to be unable to comprehend why he was being tased. These actions violated well-known and objective standards of law enforcement conduct, as well as the training directives issued by Taser International, and were objectively unreasonable and indifferent to the extreme amount of pain they were inflicting on him.

Case 3:15-cv-00350-CWR-FKB Document 157-1 Filed 10/21/16 Page 3 of 7
07/05/2016 19:45 Frances Grafton (FAX)318 255+6254 P.003/007

3

## II.

The facts or data I considered in forming these opinions include those facts and data set forth in the documents identified in the beginning of my report and include, but are not limited to the following specific facts and data:

On November 1, 2014, Michael D. McDougle was arrested by Officer Crockett and Sgt. E. Lyons while breaking and entering a residence at 285 W. Atkins, Philadelphia, Mississippi.

Sgt. Lyons was dispatched to 285 W. Atkins and was advised a B & E was in progress.

When Sgt. Lyons arrived Billy Jean Seals was holding Michael McDougle down in the doorway to the residence.

Sgt. Lyons and Billy Seals attempted to handcuff McDougle but were unable to do so.

Sgt. Lyons attempted to 'tase' McDougle but the barbs did not appear to 'close the circuit' and McDougle was not incapacitated.

In his report, Sgt. Lyons described the continued resistance by McDougle as they moved from the porch to the ground.

Sgt. Lyons called for backup and was assisted by Officer Crockett. Officer Crockett, Sgt. Lyons, and Mr. Seals were able to handcuff Mr. McDougle.

According to Sgt. Lyons, Mr. McDougle stopped resisting after he was handcuffed.

Upon arriving at the jail, approximately one block away, Sgt. Lyons stated Mr. McDougle had to be 'carried' into the jail and was placed in an isolation cell.

Mr. McDougle was checked by EMS personnel who were already at the jail concerning another matter.

Sgt. Lyons stated from what he 'gathered' he (McDougle) was ok to remain at the jail and was advised by the EMS personnel to keep a watch on him and call back if needed.

Lyons checked on McDougle before leaving and described McDougle as 'lying on the floor in isolation.'

Several hours later, Michael McDougle was found dead in his cell.

Case 3:15-cv-00350-CWR-FKB Document 157-1 Filed 10/21/16 Page 4 of 7
07/05/2016 19:45 Frances Grafton (FAX)318 255+6254 P.004/007

4

From all that I have reviewed and know about this matter, it should not have ended with the death of Michael McDougle. The facts and evidence are that this situation and subsequent death of Mr. McDougle were preventable and the conduct of the Neshoba County Sheriff's Office and the Philadelphia Police Department's conduct in this case contributed to the outcome.

The law enforcement officers who had contact with Mr. McDougle from the time he was handcuffed failed to realize that they had a medical situation by the behavior of Mr. McDougle.

The proper response would have been to transport Mr. McDougle to a hospital from the point of arrest.

Sgt. Lyons, in his arrest report, described Mr. McDougle's behavior as a person with mental issues.

A person having mental issues may be able to resist the pain of a taser or they may not have the ability to comply with police commands.

Mr. David Spivey was present on the evening of November 1, 2014, when Mr. McDougle was brought into the Neshoba County Jail.

Mr. Spivey gave a statement that he witnessed Mr. McDougle being 'dragged' into the jail by his head and witnessed him being brutally mistreated by the officers.

He also stated a taser was used on Mr. McDougle while he was handcuffed inside the jail.

Mr. Spivey said Mr. McDougle urinated on himself and he was the trustee that had to clean the urine off the floor.

Mr. Spivey further stated he felt Mr. McDougle needed immediate medical attention.

Mr. Spivey said that Mr. McDougle was bleeding onto blankets from his injuries he sustained from the officers.

Mr. Spivey said throughout the night Mr. McDougle informed the jailers his head was hurting and requested further medical attention. His request was denied.

The following day, November 1, 2014, Mr. McDougle was found dead in his isolation cell.

In his police report, Sgt. Lyons did not state that at any point after entering the jail was a taser deployed against Mr. McDougle.

Case 3:15-cv-00350-CWR-FKB Document 157-1 Filed 10/21/16 Page 5 of 7
07/05/2016  19:46 Frances Grafton                    (FAX)318 255+6254           P.005/007

5

If a taser was used on a person who is being 'dragged' or 'carried' into a jail it would be excessive force.

Mississippi Law Enforcement Officers are trained in PPCT (Pressure Point Control Tactics), a Use of Force program that teaches officers to use proportionate levels of control to counter resistance from suspects. It is widely accepted in the United States as the best Use of Force program and is used throughout Mississippi in its police academies. The touchstone of the program is called the Use of Force Continuum, which teaches the One-Plus-One theory of control. Officers in this continuum are authorized to use one level of force above the level of resistance they encounter. PPCT is consistent with Constitutional restrictions on use of force by law enforcement because it teaches that force must only be used when:

1. *There is a need for the application of force.*

2. *The force used must be proportionate.*

3. *The subject's injuries must be proportionate to the subject's level of resistance or threat to the officer or another.*

4. *The force used must be applied in good faith, based upon what a reasonable officer would do at the time.*

*These restrictions on force are consistent with Supreme Court jurisprudence in Graham v. Conner, 490 US 386 (1989).*

The law enforcement officers present should have been aware that Michael McDougle was having medical issues requiring a medical response and not a police response.

The Taser Training Manual further states:

*Considerations to Avoid CEW*
*Excessive Force Liability*

### *If person is not an immediate threat or flight risk:*

- *do not immediately resort to CEW without first attempting to use negotiation, commands or physical skills*
- *avoid using CEW on person who is actually or perceived to be mentally ill*

The failure to use proper physical techniques rather than pain compliance with a taser was excessive force.

The Training Manual for Taser further states:

> *Multiple ECD applications cannot be justified solely on the grounds that a suspect fails to comply with a command absent other indications that the suspect is an immediate threat or about to flee. In the example of an unarmed suspect who threatens an officer and is incapacitated by an ECD, then after the cycle has ended, refuses to put his hands behind his back but makes no attempt to get up and is not known to be armed, additional ECD cycles might not be justified absent other indications of an immediate threat. This is particularly true when more than one officer is present to assist in controlling a situation. The number of officers and the number suspects is frequently one factor considered by the courts in determining the level of risk faced by the officer and what would be considered reasonable force.*

The jail lock up area would have adequate law enforcement personnel without having to use a taser on a handcuffed individual.

Any beating by officers of a man who is dragged or carried into a lockup handcuffed would be excessive force and not necessary nor reasonable.

> *Claims that law enforcement officials have used excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen are most properly characterized as invoking the protections of the Fourth Amendment, which guarantees citizens the right "to be secure in their persons . . . against unreasonable seizures," and must be judged by reference to the Fourth Amendment's "reasonableness" standard. The Fourth Amendment "reasonableness" inquiry is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. Graham v. Connor, 490 US 386(1989).*

The Philadelphia Police Officers and the Neshoba County Sheriff's Deputies acted unreasonably and used excessive and unnecessary force by tasing Michael McDougle. These actions violated well-known and objective standards of law enforcement conduct, as well as the training directives issued by Taser International, and were objectively unreasonable and indifferent to the extreme amount of pain they were inflicting on him. When a reasonable person, much less a reasonable officer, examines the totality of the circumstances, the officers did not follow proper and applicable law enforcement standards and training, as described above.

I did not review any information that indicated Mr. McDougle was checked by any of the jail personnel during his time in the isolation cell.

There is also information that Mr. McDougle had a taser used on him in a 'dry stun' mode by an officer holding it against his head. As counsel develops further information, I will follow with a supplemental report.

No information was furnished me that anyone conducted a proper check in order to determine the well-being of Mr. McDougle during the hours he was confined.

### III.

I intend to rely on those exhibits identified by me at the beginning of this report, as well as those that may be produced during the continuing course of discovery in this case, to summarize or support my opinions.

### IV.

My qualifications are attached in my Resume, Exhibit "A".

### V.

This list of all other cases in which, during the previous seven years I have testified as an expert at trial or by deposition, are attached in my Resume, Exhibit "A".

### VI.

My fee schedule is attached in my Resume, Exhibit "A".

I reserve the right to modify, change and/or supplement my opinion as I review additional information furnished me concerning this matter.

W. Lloyd Grafton
Associate Professor of Criminal Justice
U.S. Special Agent (Retired)