**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**BRITTNEY MCDOUGLE, INDIVIDUALLY, AND
ON BEHALF OF THE HEIRS AND WRONGFUL
DEATH BENEFICIARIES OF MICHAEL D. MCDOUGLE,
SR., DECEASED**                                         **PLAINTIFFS**

**V.**                          **CIVIL ACTION NO. 3:15-cv-00350-CWR-FKB**

**NESHOBA COUNTY, MISSISSIPPI, ET AL.**                 **DEFENDANTS**

---

**PLAINTIFFS' RESPONSE AND MEMORANDUM IN OPPOSITION TO
GRANT MYERS AND THE CITY OF PHILADELPHIA'S
MOTION FOR SUMMARY JUDGMENT**

---

**COMES NOW** Plaintiffs, Brittney McDougle, individually, and on behalf of the heirs and wrongful death beneficiaries of Michael D. McDougle, Sr., deceased, by and through their counsel of record, and files this, *Response and Memorandum in Opposition to Grant Myers and City of Philadelphia's Motion for Summary Judgment*. Grant Myers and the City of Philadelphia are hereafter known as "Defendants." Plaintiffs move this Honorable Court to deny Defendants' *Motion* and request a hearing on said *Motion*, and as grounds therefore, would state as follows:

### RESPONSE

1. This case arises from the death of Michael McDougle, Sr. ("Plaintiff McDougle") in the Neshoba County Jail in Philadelphia, Mississippi.

2. On November 1, 2014, Plaintiff McDougle was arrested in Philadelphia, Mississippi. During his arrest, Plaintiff McDougle was brutally beaten and tasered by Defendant Officers Brad Crockett, Eric Lowdnes, Brandon Pope, and Josh Ray, ("Defendant Officers"), who were employed with the City of Philadelphia Police Department.

3.  Thereafter, Plaintiff McDougle was transported to the Neshoba County Jail and was in the care and custody of Jailers employed with the Neshoba County Sheriff Department.

4.  As a result of the acts and/or omissions by Defendant, on November 2, 2014, Plaintiff McDougle was found dead in his cell.

5.  An autopsy report revealed that Plaintiff McDougle died of a head trauma.

6.  As a result of the foregoing, Plaintiffs were caused to suffer past, present and future pain; mental and emotional anguish; past, present and future loss of mobility and capacity; loss of enjoyment of life's normal activities; loss of society, lost wages, loss of wage earning capacity, and loss of consortium.

7.  Rule 56(c) of the Mississippi Rules of Civil Procedure states that summary judgment "shall be rendered forthwith of the pleadings, depositions, answers to interrogatories, and admission on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Miss. R. Civ. P. 56(c).* In the case *sub judice*, there are issues of material fact in question.

8.  Defendants are liable for violating Plaintiff McDougle's constitutional rights, pursuant to 42 U.S.C. Section 1983, through patterns, policies, practice and/or customs, and alleged negligence in hiring, monitoring, training, and supervising. Defendants allege that Plaintiffs' claims fail as a matter of law; however, this assertion is improper.

9.  Defendants are liable for violating Plaintiff McDougle's constitutional rights, pursuant to 42 U.S.C. Section 1983, through false arrest and excessive force in violation of the Fourth Amendment and delaying and/or denying Plaintiff McDougle's medical care in violation of the Eighth Amendment. Defendants allege that Plaintiffs' claims fail as a matter of law; however, this assertion is improper.

10. As Defendants committed tortuous acts against Defendant McDougle, the Mississippi Torts Claims act does not grant Defendants immunity.

11. Plaintiffs rely on the *Memorandum in Support of Plaintiff's Response to Defendants' Motion for Summary Judgment*.

12. Further, Plaintiffs rely on the following exhibits:

   a. Excerpt from the Deposition of Billy Seales attached hereto as "Exhibit "A;

   b. Excerpt from the Deposition of Eric Lyons attached hereto as Exhibit "B";

   c. Excerpt from the Deposition of David Spivey attached hereto as Exhibit "C";

   d. Excerpt from the Deposition of Derek Moore attached hereto as Exhibit "D";

   e. Excerpt from the Deposition of and Brandi Wyatt attached hereto as Exhibit "E";

   f. Excerpt from the Deposition of Burton O'Berry attached hereto as Exhibit "F";

   g. Excerpt from the Deposition of Jami Hutchinson attached hereto as Exhibit "G; and

   h. Death Certificate dated December 30, 2015 attached at Exhibit "H".

13. Any dispute of the acts and omissions of Defendants that caused Plaintiff McDougle's death is a factual dispute, properly determined by a jury, making summary judgment improper since issues of material fact exist pursuant to Rule 56(c) of the Mississippi Rules of Civil Procedure.

## **MEMORANDUM**

## **REQUEST FOR HEARING**

Plaintiffs, by and through their counsel of record, request a hearing of this matter at a time, which is most convenient for the Court.

## INTRODUCTION

This case arises from the death of Michael McDougle, Sr. ("Plaintiff McDougle") in the Neshoba County Jail in Philadelphia, Mississippi. On November 1, 2014, Plaintiff McDougle was arrested in Philadelphia, Mississippi. During his arrest, Plaintiff McDougle was brutally beaten and tasered by Defendant Officers Brad Crockett, Eric Lowdnes, Brandon Pope, and Josh Ray, ("Defendant Officers"), who were employed with the City of Philadelphia Police Department. Thereafter, Plaintiff McDougle was transported to the Neshoba County Jail and was in the care and custody of Jailers employed with the Neshoba County Sheriff Department. As a result of the acts and omissions by Defendants, on November 2, 2014, Plaintiff McDougle was found dead in his cell. An autopsy report revealed that Plaintiff McDougle died of head trauma. As a result of the foregoing, Plaintiffs were caused to suffer physical, mental, and emotional injuries.

On May 8, 2015, Plaintiff filed a *Complaint* indicating that Defendants Neshoba County, Mississippi, Sheriff Tommy Waddell, City of Philadelphia, Mississippi, Chief Grant Meyers, Officers Brad Crockett, Eric Lowdnes, and Brad Poe are liable for (1) constitutional violations pursuant to 42 U.S.C.A. Section 1983, due to patterns, policies, and practices and/or customs of subject governmental entities; (2) civil assault and battery; (3) violation of equal protection, civil rights laws under 42 U.S.C. Section 1983 and 28 U.S.C. Section 1343; (4) excessive force; and (5) wrongful death. On or about May 11, 2015, Plaintiff filed an *Amended Complaint* adding Jailers employed with the Neshoba County Sheriff's Department.

On May 27, 2015, Plaintiff forwarded a *Notice of Claim* correspondence to Defendants outlining Plaintiffs' claims against Defendants and demanding a monetary amount for damages. On February 19, 2016, Plaintiff filed a *Second Amended Complaint* adding Neshoba County

General Hospital, removing Officer Brad Poe and adding Officer Brandon Pope and Officer Josh Ray. Additionally, Plaintiffs added a request for an injunction prohibiting Defendants' future conduct of a similar character, kind, and nature indicated in the *Complaints*. Further, Plaintiffs indicated that Defendants are also liable for: (1) general negligence; (2) negligent, grossly negligent, and wanton failure in hiring and monitoring, supervising, and training the officers involved; (3) intentional and negligent infliction of emotional distress; (4) false arrest/imprisonment; (5) medical malpractice/professional negligence, and (6) deliberate indifference and denial/delay of access to medical care.

On or about August 3, 2016, Plaintiffs filed a *Third Amended Complaint* adding Defendant Jailers Amanda Monk, Evelyn McBeath, Harvey Hickman, Burton O'Berry, and Jami Hutchinson and removing Neshoba County General Hospital. On August 18, 2016, Plaintiffs filed a *Fourth Amended Complaint* adding Defendant Jailer Joe Curry. Subsequently, Defendants filed their *Answers* to each *Complaint* denying liability. On October 21, 2016, Defendant Myers and City of Philadelphia filed a *Motion of Summary Judgment on All of Plaintiffs' Claims* alleging that there are no issues of material fact.

As outlined below, the Defendants' *Motion for Summary Judgment* should be denied, as a matter of law, and a jury should be afforded the opportunity to determine if Defendants' actions caused the death of Plaintiff McDougle. Therefore, there are genuine issues of material fact to survive a *Motion for Summary Judgment* and the Defendants' *Motion* should be denied.

## UNDISPUTED FACTS

1. On November 1, 2014, Plaintiff McDougle was arrested in Philadelphia, Mississippi by Officers employed with the City of Philadelphia Police Department.

2.  On November 2, 2014, Plaintiff McDougle died in his cell at the Neshoba County Jail while in the care and custody of Jailers employed with the Neshoba County Sheriff's Department.

## LEGAL STANDARD

Mississippi Rule of Civil Procedure 56(c) states "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages." A party seeking summary judgment bears the burden of proving there is no genuine issue of material fact. *MCRP* 56(c); *Barmada v. Pridjian*, 989 So.2d 359 (Miss. 2008); *Lamar v. Thomas Fowler Trucking, Inc.*, 956 So.2d 878 (Miss. 2007); *Caldwell Freight Lines, Inc. v. Lumbermens Mut. Cas. Co., Inc.*, 947 So.2d 948 (Miss. 2007); and *Hill v. Warden*, 796 So.2d 276 (2001).

Not only the summary judgment movant, but also the opponent, carries a burden of rebuttal, one that arises after the moving party has satisfied the burden of proof that no genuine issue of material fact exists. *MRCP* 56(c); *Price v. Purdue Pharma Co.*, 920 So.2d 479 (Miss. 2006); *Ainsworth v. Stroud*, 765 So.2d 598 (2000); *Campbell v. Cranford*, 737 So.2d 1032 (1999); and *Foster v. Noel*, 715 So.2d 174 (Miss. 1998). Summary judgment is appropriate when the non-moving party has failed to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial. MRCP 56(c); *Watson Quality Ford, Inc. v. Casanova*, 999 So.2d 830 (Miss. 2008),

rehearing denied; *Bullard v. Guardian Life Ins. Co. of America*, 941 So.2d 812 (Miss. 2006); and *Gorman-Rupp Co. v. Hall*, 908 So.2d 749 (Miss. 2005).

Summary judgment is to be granted with great caution, with any doubt being resolved in the favor of the non-moving party. *Donald v. Reeves Transport Co. of Calhoun, Georgia,* 538 So. 2d 1191, 1195 (Miss. 1989).  The evidence must be viewed in the light most favorable to the non-moving party, and "[i]f there is doubt as to whether or not a fact issue exists it should be resolved in favor of the non-moving party.  That is, it is better to err on the side of denying a motion for summary judgment if a doubt exists. . . ."  *Aetna Casualty & Surety Co. v. Berry,* 669 So. 2d 56, 70 (Miss. 1995) citing *Ratliff v. Ratliff*, 500 So. 2d 981, 981 (Miss. 1986).  The Mississippi Supreme Court has stated:

> A motion for summary judgment lies only where there is no genuine issue of material fact; summary judgment is not a substitute for the trial of dispute fact issues . . . When doubt exists whether there is a fact issue the non-moving party gets its benefit.  Indeed, the party against whom the summary judgment has been sought should be given the benefit of every reasonable doubt.

*Donald*, 538 So. 2d at 1195 (citations omitted).

Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite." *Tucker v. Hinds County,* 558 So.2d 869, 872 (Miss.1990). The Mississippi Supreme Court has also stated that "[i]ssues of fact, as a matter of proper construction of Rule 56, also exists where there is more than one reasonable interpretation that may be given undisputed testimony, where materially differing but nevertheless reasonable inference may be drawn from the uncontradicted facts, or where the purported establishment of the facts has been sufficiently incomplete or inadequate that the trial judge cannot say with reasonable confidence that the full facts of the matter have been disclosed."  *Dennis v. Searle*, 457 So. 2d 941, 944 (Miss. 1984).

Noting the difficulty of determining whether there is a genuine issue of material fact, the Supreme Court has admonished trial courts that "[i]f there is to be error at the trial level it should be in denying summary judgment and in favor of a full live trial."   *Id.*

Even when the moving party has apparently met his burden in its entirety, the judge still has the discretion to deny the motion for summary judgment.   *Donald*, 538 So. 2d at 1196. Stressing the authority of the trial judge, the Mississippi Supreme Court has stated:

> In most situations in which the moving party seems to have discharged his burden of demonstrating that no genuine issue of fact exists, the court has discretion to deny a Rule 56 motion.   This is appropriate since even though the summary judgment standard appears to have been met, the court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial.

> *Donald,* 538 So. 2d at 1196 (quoting Wright, Miller & Kane, Federal Practice and Procedure § 2728 (2ed. 1983)).

"All motions for summary judgment should be viewed with great skepticism and if the trial court is to err, it is better to err on the side of denying the motion."   *Simmons v. Thompson Machinery of Miss., Inc.,* 631 So. 2d 798, 801 (Miss. 1994), quoting *Claiborne County Board of Education v. Martin,* 500 So. 2d 981, 981 (Miss. 1986). A non-moving party can defeat a motion for summary judgment by demonstrating that evidence tendered by the moving party is itself laced with contradictions. *International Shortstop, Inc. v. Rally's Inc*., 939 F.2d 1257 (1991), *FRCP 56*.

## STATEMENT OF FACTS

On November 1, 2014, Plaintiff McDougle, twenty-nine (29) years old, entered the residence of his cousin, Billy Seales ("Seales") unexpectedly, and startled Seales. (*B. Seales Dep. 16-17:17-12; 23:10-12.*) *See excerpt from the Deposition of Billy Seales attached hereto as "Exhibit "A."* Consequently, after a telephone call from Seales, Defendant Officers arrived at

Seales' residence. *(B. Seales Dep. 30:23-25; 31:1-2)*. After tussling and being tasered by Officer Eric Lyons, Plaintiff McDougle was handcuffed ("Officer Lyons"). *(B. Seales Dep. 26:13-15; 36:7-25)*. Notably, during the tussling, Plaintiff McDougle's head hit a grill on the porch of Seales. *(B. Seales Dep. 19:8-9)*.  Thereafter, Defendant Officers put Plaintiff McDougle in the officer's patrol car for transportation to the Neshoba County Jail. *(B. Seales Dep. 28:19-22; 30:23-25; 31:1-2)*. Notably, Seales did not press any criminal charges against Plaintiff McDougle. *(B. Seales Dep. 40:22-25)*.

Defendant Officers Lyons and Ray discussed if Plaintiff McDougle needed medical attention. *(E. Lyons Dep. 24:6-10). See excerpt from the Deposition of Eric Lyons attached hereto as Exhibit "B".* Ultimately, Defendant Officers decided to take him to the Neshoba County Jail. *(E. Lyons Dep. 23:3-13)*. Upon arrival, Defendant Officers, specifically Officers Lowndes and Pope opened the police car door and dragged  Plaintiff McDougle by his head to the jail as Plaintiff McDougle was incoherent. *(D. Spivey Dep. 42:15-16; 48:21-24). See excerpt from the Deposition of David Spivey attached hereto as Exhibit "C."* Notably, Plaintiff had a knot on his head when he got to the jail. *(D. Spivey 46:3).* Plaintiff McDougle was then placed in an isolation cell. *(E. Lyons Dep. 39:10-19)*.

The paramedics from the Neshoba County Ambulance Service, Derek Moore ("Moore") and Brandi Wyatt ("Wyatt"), arrived at the Neshoba County Jail at approximately 11:22 p.m. *(D. Moore Dep. 18:17-21) (B. Wyatt Dep. 15:23-24). See excerpt from the Deposition of Derek Moore and Brandi Wyatt attached hereto as Exhibit "D" and "E".* Upon arrival, they found Plaintiff McDougle in an isolation cell lying on the floor. *(D. Moore Dep. 24:11-17) (B. Wyatt Dep. 34:17-20)*. The paramedics examined Plaintiff McDougle and Plaintiff McDougle's respirations and blood glucose were higher than normal. *(D. Moore Dep. 23:20-22; 26: 13-21)*.

Notably, the paramedics failed to check Plaintiff McDougle's blood pressure and temperature in accordance with checking all "vital signs". *(D. Moore Dep. 29:25-30:1-2)*. When Wyatt asked Defendant Jailers if they wanted Plaintiff McDougle transported to the hospital, Defendant Jailers refused and advised that they would allow Plaintiff McDougle to "sleep it off" in his cell. *(B. Wyatt Dep. 24:6-24)*. Throughout the night Plaintiff McDougle informed the Jailers that his head was hurting and received no response. *(D. Spivey Dep. 105:9-12)*.

On November 2, 2016, around 7:30 a.m., Defendant Jailers Hickman, Hutchinson and O'berry went to the cell of Plaintiff McDougle to serve him breakfast. *(B. O'berry Dep. 21:3-6)*. *See excerpt from the Deposition of Burton O'Berry attached hereto as Exhibit "F."* Plaintiff McDougle did not respond. *(J. Hutchinson Dep. 10:16-19) (B. O'berry Dep. 21:2-7)*. *See excerpt from the Deposition of Jami Hutchinson attached hereto as Exhibit "G."* When Defendant Jailer O'berry examined Plaintiff McDougle, he determined Plaintiff McDougle was not breathing, he did not have a pulse, and his body was cold. *B. O'berry Dep. 21:10-15)*. Notably, Defendant Jailer Hickman, Hutchinson and O'berry did not perform cardiopulmonary resuscitation (CPR) or any other revival or emergency care techniques, even though the policies and procedures of the jail advised that first aid should always be followed until the appropriate emergency medical system responds. *(B. O'berry Dep. 23:12, 17-20)*. Defendant Jailer Hickman contacted the emergency call center (911) for assistance. *(B. O'berry Dep. 26:21-23)*. When the paramedics arrived, they determined that Plaintiff McDougle was dead. *(B. O'berry Dep. 27:10-12)*. The autopsy report indicated that Plaintiff McDougle died from head trauma. *See Death Certificate dated December 30, 2015 attached at Exhibit "H"*.

## ARGUMENT AND AUTHORITIES

**I.     Plaintiffs' claims against Defendant Myers, in his official capacity, are not redundant to claims against the City of Philadelphia.**

Defendant Myers argues that the official capacity claim brought against him should be dismissed, as they are redundant of the claims against the City of Philadelphia. The Supreme Court has held that official-capacity claims are "in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). However, the claims are not redundant as Plaintiffs are permitted to pursue a claim of punitive damages against Defendant Myers in his official capacity, but not against the City of Philadelphia. *Youren v. Tintic Sch. Dist.,* 343 F.3d 1296, 1307 (10th Cir. 2003).  Thus, the official capacity claim against Defendant Myers is not wholly redundant to the claims against the City of Philadelphia and the notion to dismiss the official capacity claim should be denied.

**II.     Plaintiffs' claims against Defendants, pursuant to 42 U.S.C. Section 1983, are valid and supported.**

### A.     *Grant Myers is not immune from liability under Plaintiffs' Section 1983 claims.*

Supervisory officials "may be held liable for a Section 1983 violations if they either were personally involved in the constitutional deprivation or if there is a sufficient casual connection between the supervisor's wrongful conduct and the constitutional violation." *Edwards v. Jones*, 2010 U.S. Dist. LEXIS 114633, 4-5 (S.D. Miss Oct. 26, 2010), citing *Thompkins*, 828 F.2d at 304. "Absent participation in the offensive act, supervisory liability exists only if a supervisory official implements a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violations." *Thompkins*, 828 F.2d at 304.

It is clear from Defendant Myers' involvement in the implementation of the policies at City of Philadelphia Police Department that Defendant Myers violated Plaintiff McDougle's

constitutional rights. The policies implemented were not objectively reasonable in light of the

clearly established law. *Goodman*, 202 F.3d at 736. Plaintiff McDougle was severely beaten,

tasered (while still in handcuffs and thus, was not a threat to Defendant Officers), and dragged by

the head, forcefully and recklessly, into the Neshoba County Jail. Further, Plaintiff McDougle's

need for medical attention was denied. "Denial of medical care to a prisoner is a constitutional

violation only if it rises to the level of 'deliberate indifference to the serious medical need' of the

prisoner." *Neubert* at 3. (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *Domino* at 755).

"To establish 'deliberate indifference,' a prisoner must show that an official (1) was aware of the

facts from which an inference of substantial risk of serious harm could be drawn; (2) actually

drew the inference, or was deliberately blind to it; and (3) failed to take obvious steps to address

the risk." Id. (citing *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 530 (5th Cir. 1994)).

Defendants Officers were aware that Plaintiff McDougle needed medical attention before

he got into the police car for transportation to the jail as Defendant Officers discussed the same.

Further, when Plaintiff McDougle arrived at the jail, he was incoherent, unconscious and had

obvious head trauma. It is evident that Defendants failed to take the obvious steps to avoid the

risks associated with Plaintiff McDougle's injuries. As such, Defendant Myers implementation

of this policy amount to a violation of Plaintiff McDougle's constitutional rights. Defendant

Myers is not entitled to qualified immunity. Additionally, there are genuine issues of material

fact. Thus, summary judgment is not warranted. Defendants' *Motion* should be denied.

### B.     *The City of Philadelphia is not immune from liability under Plaintiffs' Section 1983 claims.*

The first inquiry in any case alleging municipal liability under Section 1983 is the

question of whether there is a direct causal link between municipal policy of custom and alleged

constitutional deprivation. *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989). Inadequacy of

police training may serve as a basis for Section 1983 municipal liability, only where failure to train amounts to deliberate indifference to rights of persons with whom police come into contact; only where municipality's failure to train its employees in relevant respect evidences "deliberate indifference" to rights of its inhabitants can such shortcoming be properly thought of as city "policy or custom" that is actionable under Section 1983. Id. at 379 citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978). Here, Defendant City claims that there is not evidence of failure to train within the City of Philadelphia Police Department. Defendant City also claims a lack of sufficient admissible proof, demonstrating "deliberate indifference." The evidence on the records is to the contrary.

Defendant Officers taseredd and severely beat Plaintiff McDougle. Notably, while Defendant Officer Lyons tussled with Plaintiff McDougle, Plaintiff McDougle hit his head on a grill. Thereafter, Defendant Officers arrested Plaintiff McDougle even though the alleged crime victim did not press any charges. After being beaten, Plaintiff McDougle was not able to be transported to the hospital due to the denial of Defendant Officers. Moreover, when Plaintiff McDougle arrived at the Neshoba County jail, he was dragged by his head out of the patrol car and into the jail by Defendant Officers. Defendant City's policy or custom of beating a citizen and denying medical care to that injured citizen, after being falsely arrested, certainly demonstrates Defendant City's failure to properly train officers, as well as, demonstrates that said custom or policy shows deliberate indifference to the injured citizen's health and well being. Therefore, but for Defendant City's failure to train its officers not to beat its arrestees and to transport the injured arrestee to the nearest medical facility for treatment, Plaintiff would not have died. Defendants are not entitled to summary judgment.

1. ***Plaintiffs' claim of false arrest under 42 U.S.C. Section 1983 is valid and supported.***

The Fourth Amendment guarantees against unreasonable seizures. To state a violation of the Fourth Amendment prohibition of false arrest, the plaintiff must allege that the officer had no probable cause to arrest him. *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001). "Probable cause exists when the totality of the facts and circumstances within the police officer's knowledge at the moment of the arrest are sufficient for a reasonable person to conclude that the suspect had committed or is committing an offense…" *Haggerty v. Tex. S. Univ.,* 391 F.3d 653 (5th Cir. 2004).

Defendants Officers lacked probable cause as Plaintiff McDougle did not commit a crime. Plaintiff McDougle entered the residence of his cousin, Billy Seales unexpectedly, and startled Seales. Consequently, Seales contacted the police department. After Seales recognized that his cousin, Plaintiff McDougle, did not commit a crime, he decided not to press charges against him. However, Defendant continued to assist in arresting Plaintiff McDougle and placing him in the police car for transportation to the Neshoba County Jail. Plaintiffs have clearly met both requirements under Section 1983 as Defendant Officers were acting under the color of the state law because falsely arresting Plaintiff McDougle, without probable cause, deprived him of his Fourteenth Amendment right against unreasonable seizures. Moreover, the contradicting facts in the record emphasize that genuine issue of material fact exists as to the whether Defendant Officers had probable cause to arrest Plaintiff McDougle. Thus, Defendants' *Motion* should be denied.

2. ***Plaintiffs' claim of excessive force under 42 U.S.C. Section 1983 is valid and supported.***

To state a violation of the Fourth Amendment prohibition of excessive force, the plaintiff

must allege: (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable. *Stepney v. City of Columbia*, 695 F. Supp.2d 412 (S.D. Miss. 2010). If a law enforcement officer uses excessive force in the course of making an arrest, the Fourth Amendment's guarantee against unreasonable seizure is implicated. *Harper v. Harris County*, Tex. 21 F.3d 597 (5th Cir. 1994). All of the requisite elements under a claim for excessive force have been met by Plaintiffs. Plaintiffs have sustained physical, emotional, mental, and constitutional injuries at the hands of Defendants. The injuries resulted directly from use of excessive force by Defendant Officers, and said force was objectively unreasonable.

Defendant Officers had no reason to believe Plaintiff was armed or a danger to them, or anyone else; therefore, Defendant Officers use of excessive force was objectively unreasonable under the circumstances. Objective reasonableness of force used by a police officer to affect an arrest depends upon facts and circumstances of a particular case, and the court, in assessing objective reasonableness of force for purposes of evaluating excessive force claim, should consider the severity of the crime at issue, whether the suspect poses a an immediate threat to the safety of others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Bush v. Strain*, 513 F.3d 492 (5th Cir. 2008).

Here, Plaintiff McDougle was injured and ultimately died of a head trauma by Defendant Officers use of excessive force. Specifically, Defendant Officers tasered, beat, and dragged Plaintiff McDougle. Moreover, genuine issues of material fact exist as to whether the force by Defendant was reasonable; thus, Defendant's *Motion* should be denied.

### 3. *Plaintiffs' claim of delay or denial of medical care under 42 U.S.C. Section 1983 is valid and supported.*

To state a violation of the Fourteenth or Eighth Amendment claim to adequate medical treatment, Plaintiffs must establish that Plaintiff McDougle's objectively serious medical need was disregarded. *Estelle v. Gamble*, 429, U.S. 97, 104-06, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). "In order to state a cognizable claim under civil rights statute because of inadequate medical care, prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). Deliberate indifference is defined as "conscious disregard of the harm that one's actions could do to the interests or rights of another." *Black's Law Dictionary* (9th ed. 2009). In this instant case, Defendant Officers were aware of Plaintiff McDougle's serious needs and denied him access to medical care. Plaintiff McDougle was tasered, beaten (which is evidenced by a knot on his head), incoherent, and unconscious when he was dragged to the jail by his head. Nevertheless, Defendant Officers still denied Plaintiff McDougle medical care as he should have been transported to the hospital and not to the detention facility. As a result, Plaintiff McDougle succumbed to his head injuries and died. Moreover, genuine issues of material fact exist as to whether Defendant Officers acted with deliberate indifference; thus, Defendant's *Motion* should be denied.

### III.    Plaintiffs' state law claims against Defendants are not barred by the immunities and protections of the Mississippi Tort Claims Act.

### A. *Defendants are not immune from Plaintiffs' state law claims under MCA Section 11-46-9(1).*

Immunity under the Mississippi Tort Claims Act (MTCA) protects the city from lawsuits

arising out of the performance of a police officer's duties in law enforcement with respect to the alleged victim. *City of Jackson v. Powell*, 917 So.2d 59 (Miss. 2005). Defendants are liable under MCA Section 11-46-9(1)(c), which provides:

> A government entity and its employees acting within the course and scope of their employment of duties shall not be liable for any claim: [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities relating to police or fire protection unless the employee acted in reckless disregard of the safety and well-being of any person not engaged in criminal activity at the time of the injury[.]

However, for the officers, and ultimately the city, to receive the immunity, there must be a casual nexus between the plaintiff's criminal activity and the tortfeasor's wrongdoing. *Shelton v. City of Laurel*, 2007 WL 1141501 (S.D. Miss. 2007) citing *Estate of Williams ex rel. Williams v. City of Jackson*, 844 So.2d 1161 (Miss. 2003). Section 11-46-9 does not protect a municipality where "the fact that the [plaintiff] is engaged in a criminal activity is merely fortuitous and has no relation to the transaction out of which liability would otherwise arise." *Id*. at 7, also citing *City of Jackson v. Perry*, 764 So.2d 373 (Miss. 2000)(refusing to extend Section 11-46-9 immunity to city where officer had a car accident with unlicensed driver; the plaintiff's "criminal activity" did not cause officer's conduct). Accordingly, the applicability of Section 11-46-9(1)(c), must be considered in light of the plaintiff's individual claims. *Id*.

Defendant Officers tasered, beat and dragged Plaintiff McDougle from the police car to the isolation cell in the Neshoba County Jail with a knot on his head from obvious head trauma. It is further noted in the autopsy report that one of Plaintiff McDougle's causes was the trauma to his head. Defendant Officers are well aware that Plaintiff McDougle sustained his head injuries while in their custody. Defendant Officers actions amount to assault and battery; thus, Defendants are not entitled to immunity.

As has been previously established, Defendant Officers acted with reckless disregard, as Defendant Officers tasered, beat, and roughly handling (dragging Plaintiff McDougle), while handcuffed and in police custody. To establish a prima facie case of assault, the plaintiff, must prove that (1) the defendant intended to cause a harmful or offensive contact with the plaintiff, or an imminent apprehension of such a contact, and (2) the plaintiff was put in such an imminent apprehension. *Id.* also citing Whitten v. Cox, 799 So.2d 1 (Miss. 2000). "A battery goes one step beyond as assault in that harmful contact actually occurs." *Id.* Defendant Officers actions of intentionally causing Plaintiff McDougle physical injuries as described above, meet all of the aforementioned elements assault and battery under *Shelton,* and Plaintiffs claims are not barred.

**B. Defendant Myers is not immune from Plaintiffs' state law claims under MCA Section 11-46-7(2).**

Immunity under MTCA protects the police officers from lawsuits against them in their individual capacity arising out of the performance of a police officer's duties in law enforcement with respect to the alleged victim. *Smith v. Brookhaven*, 914 So.2d 180 (Miss. App. 2005). MCA Section 11-46-7(2) states:

> An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense.

Thus, an employee can be found to be acting outside of the course and scope of employment if acting with malice. Malice is defined as "reckless disregard of the law or of a person's legal rights." *Black's Law Dictionary* (9th ed. 2009). Again, Defendant

Officers who were follow the policies of Defendant Myers as described above acted with reckless disregard, as Defendant Officers tasered, beat, and denied medical care to Plaintiff McDougle. As such, Plaintiffs' claims are not barred.

**C. *Plaintiffs' claims against Defendants are not barred as Plaintiffs' complied with the Mississippi Tort Claims Act's pre-suit notice requirement.***

Defendants have erroneously made an attempt to relieve themselves of the responsibility in the mistreatment of Plaintiff McDougle. Defendants' actions by allowing Plaintiff McDougle to be tasered, beaten, dragging him into the jail by his head and denying medical attention while in their custody when Plaintiff McDougle was obviously severely injured, equate to that of an intentional tort. "Therefore, the MTCA does not apply to [intentional] torts, and any legal action against a government employee for these intentional torts must necessarily proceed against him or her as an individual." *Zumwalt v. Jones County Bd. Of Sup'rs*, 19 So.3d 672, 688 (Miss. 2009). Although notice was provided to the Philadelphia City clerk, the *Amended Complaint* was filed days later. Even if this Court decides to dismiss the state law claims against Defendants, it must not dismiss the intentional tort claims against Defendant because his actions and omissions fall outside the scope of the MTCA.

## CONCLUSION

Defendants' *Motion for Summary Judgment* should be denied, as a matter of law, and a jury should be afforded the opportunity to determine if Defendants' policies, training, and tortuous actions caused the death of Plaintiff McDougle as there are genuine issues of material fact. Moreover, Defendants are not entitled to qualified immunity as their conduct violated clearly established statutory and/or clearly established constitutional rights, and their conduct was objectively unreasonable in light of the clearly established law. Further, Plaintiffs' state law

claims are not barred against Defendants due to Defendants' tortuous acts. Defendant's *Motion for Summary Judgment* should be denied.

       **WHEREFORE, PREMISES CONSIDERED** Plaintiffs pray that this Honorable Court will deny Defendant's *Motion for Summary Judgment*. Plaintiffs also pray for all other general relief this Court deems to be fair and just.

       Respectfully submitted, this the 4th day of November 2016.

       **BRITTNEY MCDOUGLE,et al.**


       s/Carlos E. Moore


       _____
       CARLOS MOORE, MSB #100685


**OF COUNSEL:**

**MOORE LAW GROUP**
**306 Branscome Drive**
**Grenada, Mississippi 38901**
**Telephone: 662-227-9940**
**662-227-9941 - Fax**
**Carlos@CarlosMooreLaw.com**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above and foregoing document was transmitted via EFC to all counsel of record.

**This the 4th day of November 2016.**

s/ Carlos E. Moore

_____

Carlos Moore, MSB #100685